UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMY R. GURVEY,<br><br>                           Plaintiff,<br><br>                -against-<br><br>LEGEND FILMS, INC., f/k/a LEGEND FILMS, LLC,<br>JEFFREY B. YAPP, DAVID G. MARTIN and BARRY<br>B. SANDREW,<br><br>                          Defendants. | Civil Action No.:<br>08-CIV-9256 (SHS)<br><br>JURY TRIAL DEMANDED |

Plaintiff Amy R. Gurvey, by and through her attorneys, Squitieri & Fearon, LLP, hereby alleges as follows:

1.      Plaintiff had a contract with defendant Legend Films Inc., ("Legend" or "Company") to serve as the Company's legal counsel. Indeed, Legend identified Gurvey as its "General Counsel" in a Prospectus it issued in 2001 in connection with an offering of Legend securities. Gurvey provided valuable legal services to Legend at the request of Legend and the individual defendants prior to and for the life of the contract but was never paid for the services. In addition, in connection with providing legal services, Gurvey also incurred out of pocket expenses[1] in the course for providing these legal services for which Legend has never reimbursed her. Gurvey has made repeated demand upon defendants for payment for her services but despite repeated commitments to pay Gurvey for the services she rendered to Legend it has failed to pay her anything.

2.      In addition, plaintiff provided legal services to defendants Yapp and Sandrew in connection with their legal defense of claims filed against them in their capacity as Board

---

[1]    Defendants erroneously maintain that they have reimbursed Plaintiff in excess of $5,000 for her expenses.

Members of American Film Technologies prior to the establishment of Legend Films. Although these defendants promised to pay Gurvey for her services they have never paid anything to Gurvey despite repeated commitments to do so. These commitments have continued through the Fall of 2008.

## PARTIES

3.  Plaintiff Amy Gurvey was at all times relevant to this action, an attorney licensed in the States of California and New York. At all times relevant to this action, she was a practicing attorney earning her livelihood from providing legal services to clients' pursuant clients' request. At all relevant times, Gurvey was extremely well qualified to provide high-level legal services to clients, such as defendants, in the entertainment business given Gurvey's training and experience in the entertainment and intellectual property legal specialties. In addition, at all relevant times, Gurvey had significant and valuable business experience which she put at the service of her clients, including defendants, thus enhancing the value of the services she provided. She has experience in the field of live music concerts as a former concert producer and international distributor for artists Ella Fitzgerald, and Jose Carreras and in her capacity as a chief executive for videogame mastermind Nolan Bushnell (Inventor of "Pong", Atari and Chuck E. Cheese), she helped develop and launch the music industry's first digital jukebox technology. Plaintiff was an executive at an entity based in Geneva, Switzerland that developed one of the premier laser engraving kiosk technologies for retail distribution worldwide.

4.  Defendant Legend Films is a San Diego based company incorporated in Nevada, founded in 2001 by the defendants Yapp, Martin and Sandrew. Plaintiff provided elag services instrumental to the formation and launch of Legend and it s acquisition of the intellectual

property that is its main asset. The Company specializes in the restoration and colorization of old black and white films and television shows for DVD and HDTV and theatrical release. The colorization and restoration process is accomplished through a unique and patented digital method, filed with the United States Patent office based on Plaintiff's counsel to Yapp and Sandrew after she joined the Company. Since its inception, Legend Films has enhanced dozens of films and television series, including *Shirley Temple*, *The Three Stooges*, *Miracle on 34th Street*, and *Night of the Living Dead*. These products are available commercially through the company's website.

5. Defendant Barry B. Sandrew, PhD ("Sandrew") is the names "inventor" an all digital process for colorizing black and white films. Sandrew's first company, American Film Technologies, restored and colorized films, televisions episodes and cartoons between 1986 and 1993. In 2000, Sandrew reinvented the analog process of colorization with an advanced pattern recognition technology that automated much of the process. In 2001, along with Defendants Yapp and Martin, Sandrew founded Legend Films. Sandrew currently serves as Chief Operating Officer ("COO"), Chief Technical Officer ("CTO") and board member to Legend Films.

6. Defendant Jeffrey B. Yapp ("Yapp") currently serves as Chairman of the Board of Directors of Legend Films. In addition to serving on the Legend Board, he is the Executive Vice President for MTV Networks Music/Logo Entertainment Group. Before joining MTV Networks, Yapp served as President of the Retail Group for Cablevision Systems Corporation, and prior to that, he served as President and Chief Operating Officer of the Hollywood Video subsidy of Hollywood Entertainment Corporation.

7. Defendant David G. Martin ("Martin") serves as Chief Executive Officer and Board Member to Legend Films. Before joining Legend Films, Martin's resume includes

3

serving as the Executive Vice President and CFO of Hollywood Entertainment Corp, Managing Director of Montgomery Services and working with Nomura Securities and Salomon Brothers as an investment banker. Upon Information and belief, Martin ha served as CEO of Legend Films since 2002-2003.

## JURISDICTION

8.  Jurisdiction lies with this court pursuant to 28 USC § 1332(a)(1) based upon diversity of citizenship. There is complete diversity between the plaintiff and defendants: Plaintiff Amy Gurvey is a citizen of the State of New Jersey; Defendant Legend Films, Inc., is a private corporation incorporated in Nevada and having its principal place of business in the State of California; Defendant Sandrew, upon information and belief, is a citizen of the State of California, Defendant Yapp, upon information and belief, is a citizen of the State of California; and Defendant Martin, upon information and belief, is a citizen of the State of California. The amount in controversy exceeds $75,000.00, exclusive of interests and costs. At the time Legend Films, Inc., then Legend Films, LLC, employed several people in a New York office. Gurvey and Yapp each performed a substantial amount of their work for Legend Films within New York.

9.  Venue is proper her under 28 USC § 1391(a)(3) because defendant Legend conducts business in this state. In addition, the contract which is the subject of this action contains a venue provision that requires the parties to bring any suits arising out of the relations of the partiers in New York State. Paragraph 10 of the Employment Agreement between Gurvey and Legend Films, entitled "Choice of Law/Forum," which states that "Any action brought pursuant to this Agreement must be instituted in the federal or state courts of the State of New York." The wrongs complained of herein are substantially related to the Employment

Agreement negotiated within the City and State of New York and many of the services provided by plaintiff to defendants were provided in the State of New York.

10.  Paragraph 10 of the Employment Agreement between Gurvey and Legend Films entitled "Choice of Law/Forum," states that "This agreement is to be construed and enforced in accordance with the laws of the State of New York, irrespective of the principles of conflicts of law."

## STATEMENT OF FACTS

11.  Starting in late 1999, Defendants Sandrew and Yapp began seeking and accepting legal services from Plaintiff in relation to breach of fiduciary duty claims brought against certain board members of American Film Technologies, Inc. ("AFT"). On June 30, 1999, while he was with Hollywood Entertainment Corporation, Yapp was voted onto the Board of Directors for American Film Technologies Defendant Sandrew had founded AFT in 1986, and served as president and chief operating officer of the company while the shareholder litigation was pending. Defendant Yapp was specifically named in the action, in his capacity as a board member of AFT.

12.  During this same time, Defendant Sandrew developed a revolutionary new method of restoring and colorizing film with a highly advanced pattern recognition technology that was analog based.

13.  Given the difficulties with AFT, and the advent of this new colorization technology, Plaintiff recommended to Sandrew and Yapp that they patent Sandrew's digital restoration method and create a separate company in an effort to keep the executives separate from the pending litigation. Sandrew and Yapp resigned from AFT on November 7, 2000.

14.     At the time of his resignation from AFT, Sandrew had Plaintiff working on several tasks in her capacity as an attorney, including reviewing patents, contracts and employment agreements as they pertained to Sandrew and potential outsourcing companies intended to implement his patented restoration method, including 3-D pipeline of California.

15.     Plaintiff continued to provide legal services to Defendants Yapp and Sandrew in relation to AFT well into 2001 and during the same period and thereafter provided legal services at the request of the defendants to Legend.

16.     In early 2001, Sandrew and Yapp enlisted Plaintiff's help in establishing Legend Films, LLC and patenting Sandrew's digital "Image Sequence Enhancement System and Methods"

17.     Prior to Plaintiff's suggestion to patent a digital restoration method, Sandrew's patented technology was only analog. Plaintiff's suggestion and subsequent efforts toward successfully patenting the updated technology increased the value of Legend Films by $3,000,000 to $5,000,000.

18.     At all relevant times, defendants held plaintiff out to the public as Legend's "General Counsel" and part of the "management team" at Legend. For example, plaintiff was described as "General Counsel" in Legend's prospectus and business plan and other documents circulated outside the Company.

19.     Plaintiff was also identified in the Company's business plan, dated May, 2001, under the heading "Management Team and Key Personel [sic]." Her professional resume was also attached in an appendix to the business plan. Legend held out Gurvey to the public as the Company's legal counsel when it supplied potential investors with copies of the Company's

6

executive summary, which listed Plaintiff as General Counsel, throughout 2001 and 2002. In internal Company communications, Gurvey was described as a member of the "team"

20. Throughout 2000 and 2001, Plaintiff served defendants' and Legend's legal needs in her capacity as General Counsel. As General Counsel, Plaintiff's services included but were not limited to:

- Contract drafting and review for Legend principals, potential Legend employees, and Legend's outside vendors;
- Services in connection with Legend proposals to film studios;
- Seeking potential investors to meet Legend's financing needs;
- Legal services to protect Legend's intellectual property;
- Legal drafting services to prepare documents for Legend's capital raising activities
- Legal services in connection with the formation of the Company

21. On November 15, 2001, Gurvey entered into an Employment Agreement (the "Agreement") with Legend Films, LLC – at that point a Nevada limited liability company – to serve as the Company's General Counsel. The agreement was for an initial term of two (2) years commencing January 1, 2002, with a base salary of $125,000 per year plus other remuneration and benefits, including an ownership stake in the Company.

   a. Section 1, entitled "Employment" reads: The company employs and engages Gurvey to serve as General Counsel for the Company. As part of her employment, Gurvey consents to the Company's right to list her in its Executive Business Summary as the Company's General Counsel."

   b. Section 1.2(b) states that "Gurvey will be issued 3% of Class B Non-Voting shares in consideration for past services rendered to the Company and its Founders Jeffrey Yapp and Barry Sandrew since 2000."

7

c. Section 2 of the Agreement states that "The initial term of this Agreement shall commence on January 1, 2002 and will continue for two(2) years with mutual options for each party to renew this Agreement for respective two year terms unless sooner terminated as provided herein."

d. Section 3, under the heading "Compensation," sets forth that

"[I]n consideration for her employment hereunder, Gurvey will receive the following compensation and benefits from the Company:

(3.1 Past Services) 3% of the 20,000 authorized Non-Voting Class B (600) shares are already due, owing and payable in consideration for past services rendered to the Company and to its founders Jeffrey B. Yapp and Barry Sandrew since 2000.

(3.2 Base Salary) One hundred Twenty Five Thousand ($125,000) Dollars per annum commencing January 1, 2002 for each of the first two years payable on the same accounting schedule as other management executives

(3.3 Bonus) For each colorization content or distribution Agreement introduced by Gurvey and signed by the Company, Gurvey will receive Twenty Five ($25,000) Thousand Dollars payable in a lump sum upon execution of either a deal memorandum or long-form agreement, whichever is earlier.

(3.4 Stock Options) A stock option plan will be offered to Gurvey on a favored nation's basis with other management executive employees. The exercise price will never be higher than 80% of the market price per share in effect on the date of issuance on the NASDAQ.

(3.5 Stock Awards) However, Gurvey will have the right to be issued additional shares commencing January 1, 2002 on a favored nations basis with management executives of the Company hired after her.

(3.6 Benefits) Employee shall be entitled to participate in any other employee benefits made available to Company employees on a favored nations basis with other executive employees and consistent with the terms and conditions of Company's policies, including, personal time off and health insurance, pension or other benefits as per Company's handbook.

22. Section 4 of the Agreement stated that:

> Company agrees to reimburse Gurvey for business expenses including phone and fax, supplies, computer research, travel that are incurred in discharge of duties under this Agreement upon submission receipts. Gurvey will be reimbursed within fourteen (14) days after submission of an expense report to the Company and appropriate receipts. Notwithstanding the foregoing, Gurvey acknowledges receipt from the Company of the sum of Ten Thousand ($10,000) Dollars as the amount of expenses to set up an office in a NYC Hotel in September, 2001 after the World Trade Center Disaster and for other office expenses from 2000-present.

23. According to Section 7.1 of the Agreement, the Company could only terminate Gurvey after she was given "ninety (90) days prior written notice and a reasonable opportunity to cure an allegedly failure to substantially perform." Additionally, upon such termination, "Gurvey [would] be entitled to salary up to and including the last date of employment, any accrued but unused personal time off and all earned bonuses, stock options and deferred compensation."

24. Section 7.2 of the Agreement stated that "Termination...without cause will obligate the [Legend Films] to pay Gurvey a one-time payment of One Hundred Thousand ($100,000) Dollars as severance. Gurvey stock and benefits vesting rights will endure until such time as the severance payment is made."

25. In addressing Attorney's Fees, Section 7.3 of the Agreement stated that, "should any litigation ensue between the parties emanating from a dispute over termination, salary, stock, benefits or severance, the prevailing party will be entitled to recover its attorneys' fees and costs."

26. Shortly after entering the Agreement, in February of 2002, Plaintiff joined the firm Cowan, Liebowitz & Latlaw, P.C. ("Cowan") in an "of counsel" capacity. Once Gurvey joined the firm, another Cowan employee, Lewis Gable, Esq., took over day-to-day

9

responsibilities related to filing Sandrew's Patent under Gurvey's supervision. However Gurvey continued to personally provide legal services the defendants. Under Schedule A Gurvey's employment contract with Cowan, signed by the firms managing partner Bill Borchard, Esq. on April 22, 2002, Gurvey was permitted to continue to work in her capacity as General Counsel to Legend Films, and the firm held no rights to her 3% Stock Interest in Legend Films.

27.    Defendants confirmed the terms of Gurvey's contract with Legend in various writings.

28.    On April 10, 2002, David Martin was hired as Chief Executive Officer of Legend Films. Plaintiff was instructed by Defendant Yapp to draft an employment contract between Legend and Martin, with a base salary of $250,000 per year plus 600 shares of Class-B Non-Voting stock. Plaintiff did so and her work was accepted by defendants

29.    Gurvey continued to perform legal services for Legend Films through October of 2002. In November of 2002, Defendant Yapp informed her over the phone that she was to be terminated without cause. Yapp has since admitted to Gurvey that Gurvey was terminated because Legend did not then have the money to pay her.

30.    In September, 2008, it was reported that Legend Films had successfully raised $13 Million in Venture Capital Funding.

31.    To date, Plaintiff has not been paid the $125,000 owed to her under the contract, nor has she received the 3% pre-dilution stock participation of the LLC membership interests or its equivalent, for her services rendered prior and subsequent to the formation of the Agreement. The only payment made by Legend Films paid Cowan for legal work performed by Cowan partner Lewis Gable, Esq. but that amount was separate, and not intended for, legal services provided by Gurvey .

32. Legend Films has also failed to tender the $100,000 in severance guaranteed to Plaintiff under the Agreement as a result of Plaintiff's termination without cause.

33. Defendant Yapp has made consistent representations to Plaintiff that she will be paid under the terms of the contract, but has failed to make any advances toward that end.

34. In 2005, in order to dissuade Plaintiff from filing suit for breach of contract, Defendants offered Gurvey a settlement of 40,000 shares of Legend Stock through their new corporate attorney, Gregory Clarke Newton. However, despite several requests for the necessary due diligence documentation, Defendants failed to furnish Plaintiff with the information needed to ascertain what value, if any, the 40,000 shares had.

## AS FOR THE FIRST CAUSE OF ACTION
## AGAINST DEFENDANTS SANDREW AND YAPP

### FOR SERVICES RENDERED TO INDIVIDUAL DEFENDANTS' IN THEIR CAPACITY AS DIRECTORS OF AMERICAN FILM TECHNOLOGIES
(Quantum Meruit)

35. Plaintiff incorporates Paragraphs "1" through "34" above, by reference.

36. Under the doctrine of quantum meruit, defendants have been unjustly enriched by receiving the benefit of the services provided by the plaintiffs in an amount to be determined at trial, but believed to be no less than One Hundred Thousand Dollars ($ 100,000.00), plus interest and the costs of this action

## AS FOR THE SECOND CAUSE OF ACTION
## AGAINST INDIVIDUAL DEFENDANTS SANDREW AND YAPP

### FOR SERVICES RENDERED IN CONNECTION WITH LEGEND FILMS PRIOR TO THE FORMATION OF LEGEND FILMS
(Quantum Meruit)

37. Plaintiff incorporates Paragraphs "1" through "36" above, by reference.

38. Under the doctrine of quantum meruit, defendants have been unjustly enriched by receiving the benefit of the services provided by the plaintiffs in an amount to be determined at trial, but believed to be no less than Three Hundred Thousand Dollars ($ 300,000.00), plus interest and the costs of this action.

### AS FOR THE THIRD CAUSE OF ACTION
### AGAINST LEGEND FILMS

### FOR SERVICES RENDERED TO LEGEND FILMS
(Quantum Meruit)

39. Plaintiff incorporates Paragraphs "1" through "38" above, by reference.

40. Under the doctrine of quantum meruit, Legend Films has been unjustly enriched by receiving the benefit of the services provided by the plaintiffs in an amount to be determined at trial, but believed to be no less than Three Hundred Thousand Dollars ($ 300,000.00), plus interest and the costs of this action

### AS FOR THE FOURTH CAUSE OF ACTION
### AGAINST LEGEND FILMS
(Breach of Contract)

41. Plaintiff incorporates Paragraphs "1" through "40" above, by reference.

42. Legend Films entered into a contract with Plaintiff under which Plaintiff agreed to serve as General Counsel to Legend Films for a minimum of two years in exchange for a base salary of $125,000 per year with a severance payment of $100,000 in the event of termination without cause plus other remuneration pursuant to the terms of the agreement.

43. Defendant breached the Agreement by failing furnish Plaintiff with any amount of the promised salary or Legend Films stock, and by terminating Plaintiff prior to the expiration of her contracted term. Legend's failure to provide Plaintiff with the severance payment guaranteed under the Agreement also constituted a breach of contract.

44. Legend Films is liable to Plaintiff for damages as a result of its breach of contract.

45. Plaintiff has been damaged Legend Film's conduct.

### AS FOR THE FIFTH CAUSE OF ACTION
### AGAINST ALL INDIVIDUAL DEFENDANTS
(Breach of Contract)

46. Plaintiff incorporates Paragraphs "1" through "45" above, by reference.

47. Defendants entered into a contract with Plaintiff under which Plaintiff agreed to serve as General Counsel to Legend Films for a minimum of two years in exchange for a base salary of $125,000 per year with a severance payment of $100,000 in the event of termination without cause and other remuneration pursuant to the terms of the agreement.

48. Defendants breached the Agreement by failing to perform their obligations under the Contract including paying plaintiff her base salary and distributing to her equity interest in Legend Films and by terminating Plaintiff prior to the expiration of her contracted term. Legend's failure to provide Plaintiff with the severance payment guaranteed under the Agreement also constituted a breach of contract.

49. Defendants are jointly and severally liable to Plaintiff for damages incurred as a result of their breach of contract.

50. Plaintiff has been damaged Defendants' conduct.

### AS FOR THE SIXTH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
(Promissory Estoppel)

51. Plaintiff incorporates Paragraphs "1" through "50" above, by reference.

52. Plaintiff entered into an Agreement with Defendants wherein she promised to provide her legal services for the benefit of Legend Films in exchange for a base salary of

13

$125,000, a 3% interest in the Company's stock, and a $100,000 in the event of termination without cause as well as other remuneration pursuant to the terms of the Agreement.

53. In reasonable reliance on Defendant's promises, Plaintiff diligently performed under the terms of the Agreement, providing her services for more than a year from the date of the Agreement.

54. Plaintiff's actions, undertaken in reasonable reliance on Defendants' promises, benefited Defendants.

55. Plaintiff's actions, undertaken in reasonable reliance on Defendants' promises, worked to Plaintiff's detriment insofar as she performed valuable legal services, provided valuable advice, and dedicated a considerable amount of her time toward the endeavors of Defendants all-the-while believing that she would be adequately compensated for her contributions.

56. The promises made by Defendants to Plaintiff are enforceable under the doctrine of Promissory Estoppel.

57. Plaintiff is entitled to recover under the terms of the Agreement in an amount no less than Four Hundred Thousand Dollars ($400,000).

### AS FOR THE SEVENTH CAUSE OF ACTION
### AGAINST LEGEND FILMS
(Specific Performance)

58. Plaintiff incorporates Paragraphs "1" through "57" above, by reference.

59. Defendants entered into a contract with Plaintiff wherein Plaintiff was guaranteed 3% of the 20,000 authorized non-voting Class-B shares of Legend Films, LLC, already due and owing at the time of the Agreement, payable in consideration for past services rendered to the Company and Defendants Yapp and Sandrew since 2000.

60. Defendants breached the Agreement by failing furnish Plaintiff with any amount of the promised salary or Legend Films stock, and by terminating Plaintiff prior to the expiration of her contracted term. Legend's failure to provide Plaintiff with the severance payment guaranteed under the Agreement also constituted a breach of contract.

61. The stock guaranteed under the contract is unique in character in that there exists no other real or other properties substantially similar thereto.

62. As a result of Defendants' breach, Plaintiff has been deprived of the possession of Legend Films stock.

63. Plaintiff has no remedy in the ordinary course of law adequate to compensate her for her damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendants jointly and severally as follows:

1. ON THE FIRST CAUSE OF ACTION, damages and interest to the date of final adjudication of this matter, an amount to be determined at trial, but no less than the sum of One Hundred Thousand Dollars ($100,000.00) in actual and compensatory damages, with interest and the costs of this action.

2. ON THE SECOND CAUSE OF ACTION, damages and interest to the date of final adjudication of this matter, an amount to be determined at trial, but no less than the sum of Three Hundred Thousand Dollars ($300,000.00) in actual and compensatory damages, with interest and the costs of this action.

3. ON THE THIRD CAUSE OF ACTION, damages and interest to the date of final adjudication of this matter, an amount to be determined at trial, but no less than the sum of Three

Hundred Thousand Dollars ($300,000.00) in actual and compensatory damages, with interest and the costs of this action.

4. ON THE FOURTH CAUSE OF ACTION, damages and interest to the date of final adjudication of this matter, an amount to be determined at trial, but no less than the sum of (a) unpaid wages, (b) the value of Legend Films stock owed under the terms of the Agreement and (c) a severance payment of $100,000, with the total amount being no less than Four Hundred Thousand Dollars ($400,000.00) in actual and compensatory damages, with interest and the costs of this action.

5. ON THE FIFTH CAUSE OF ACTION, damages and interest to the date of final adjudication of this matter, in an amount to be determined at trial, but no less than the sum of (a) unpaid wages, (b) the value of Legend Films stock owed under the terms of the Agreement and (c) a severance payment of $100,000, with the total amount being no less than Four Hundred Thousand Dollars ($400,000.00) in actual and compensatory damages, with interest and the costs of this action.

6. ON THE SIXTH CAUSE OF ACTION, damages and interest to the date of final adjudication of this matter, in an amount to be determined at trial, but no less than the sum of (a) unpaid wages, (b) the value of Legend Films stock owed under the terms of the Agreement and (c) a severance payment of $100,000, with the total amount being no less than Four Hundred Thousand Dollars ($400,000.00) in actual and compensatory damages, with interest and the costs of this action.

7. ON THE SEVENTH CAUSE OF ACTION, issuance of stock in Legend Films, Inc. that is today the equivalent of what Plaintiff would have received under her contract with Legend Films, LLC.

8. On all causes of action, attorneys fees and costs.

9. Such other and further relief as the Court may deem just and proper, including attorneys fees.

Dated: New York, New York
October 28, 2008

SQUITIERI & FEARON, LLP

By: _____
Lee Squitieri (LS-1684)
32 East 57th Street, 12th Floor
New York, New York 10022
Tel: 212-421-6492
Fax: 212-241-6553
lee@sfclasslaw.com

Attorneys for Plaintiff